
AMY J. LONGO (Cal. Bar No. 198304)
Email: longoa@sec.gov
PETER F. DEL GRECO (Cal. Bar No. 164925)
Email:  delgrecop@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katharine E. Zoladz, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>REMINGTON CHASE a/k/a WILLIAM WESTWOOD a/k/a WILLIAM ELLIOT,<br><br>　　　　Defendant. | Case No.<br><br>**COMPLAINT** |

　　　　Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

　　　　1.　　The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

　　　　2.　　Defendant has, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national

securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because defendant Remington Chase a/k/a William Westwood a/k/a William Elliot ("Chase") resided in this district when the acts described herein were committed.

**SUMMARY**

4. This matter concerns the misuse of investor funds by Defendant Remington Chase a/k/a William Westwood a/k/a William Elliott ("Chase"), the principal and founder of Knightsbridge Entertainment, Inc. ("Knightsbridge").

5. From February 2016 through June 2018, Knightsbridge raised at least $62 million from more than 100 investors nationwide and overseas in an unregistered offering of its securities.

6. Chase promoted Knightsbridge as being in the business of providing post-production film financing to motion picture companies. According to Chase, Knightsbridge made high-interest loans to those companies, which allowed it to pay its investors attractive rates of interest for the short-term use of their monies.

7. Knightsbridge used a relatively small portion of investor funds for their stated purpose, but used the majority of investor funds for undisclosed purposes, including the satisfaction of obligations owed by other unrelated entities that Chase controlled and for Chase's personal benefit.

8. At times, Knightsbridge used investor principal and funds from unrelated businesses controlled by Chase to finance the returns it paid to its investors.

9. Consequently, Chase violated the securities antifraud provisions of Sections 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act

and Rule 10b-5 thereunder.

10. Chase also failed to register Knightsbridge's offering of its securities, and no exemption for the registration requirements applies.  Consequently, Chase violated the securities registration provisions of Sections 5(a) and 5(c) of the Securities Act.

11. With this action, the SEC seeks a permanent injunction, disgorgement of ill-gotten gains with prejudgment interest, and a civil penalty against Chase.

## THE DEFENDANT

12. **Remington Chase a/k/a William Westwood a/k/a William Elliot**, age 61, was the founder of Knightsbridge and served as its CEO until it ceased operations in June 2018.  He was a resident of Marina del Rey, California but is now believed to reside in London, England.

## RELATED PARTIES

13. **Knightsbridge Entertainment, Inc. ("Knightsbridge")** is a Colorado corporation located in Malibu, California.  Knightsbridge is now defunct.  It was at all times herein controlled by Chase.

14. **Chasing Air, Inc. ("Chasing Air")** is a California corporation located in Malibu, California.  Its Articles of Incorporation identify William Westwood, a Chase alias, as its sole officer and director.  It is now defunct.

15. **Starfall, Ltd. ("Starfall")** is a Colorado corporation located in Malibu, California.  Starfall is now defunct.  It was at all times herein controlled by Chase.

## THE ALLEGATIONS

### The Knightsbridge Offering

16. Chase exercised sole control over Knightsbridge, Chasing Air and Starfall.

17. Knightsbridge, through Chase and others, represented to investors that it provided post-production film financing to movie companies that had exhausted their budget but had not yet completed their film.

18. Knightsbridge offered its investors attractive rates of interest for the short-term use of their monies, which it claimed it would lend to cash-strapped movie

companies at yet-higher rates of interest.

19. Knightsbridge commenced the offer and sale of its securities in or about February 2016.

20. Knightsbridge offered and sold securities in the form of promissory notes, which were memorialized in a document titled "Security and Investment Agreement" (the "Agreements").

21. Each Agreements included, among other things, the following terms:

    (a) The amount advanced, typically a five- or six-figure sum;

    (b) The premium to be paid thereon, which typically ranged from 10% to 25%;

    (c) The date on which the amount advanced and premium thereon were to be repaid, which typically ranged from 30 days after execution to 10 business days following commencement of principal photography; and

    (d) The name of the motion picture or pictures for which the amount advanced would be allocated.

22. The Agreements do not describe any other manner in which Knightsbridge would use investor funds.

23. Knightsbridge entered into Agreements with about 100 investors. Some of the parties to those Agreements are entities that pooled the monies of several individuals, so the number of actual investors is higher.

24. From February 2016 to June 2018, Knightsbridge raised at least $62 million from the sale of its securities.

**The Use of Investor Funds**

25. Chase exercised sole control over the finances of Knightsbridge, Chasing Air and Starfall.

26. Chase used the monies in the accounts of Knightsbridge, Chasing Air and Starfall interchangeably and without regard to corporate distinction, with some of the

monies provided by Knightsbridge investors being deposited into the accounts of Chasing Air and Starfall, and some payments due Knightsbridge investors being made with funds in the accounts of Chasing Air and Starfall.

27. Chase used a relatively small portion of the funds raised by Knightsbridge from the sale of its promissory notes for their stated purposes.

28. Chase used the majority of the funds raised by Knightsbridge for purposes having no relationship to the post-production financing of motion pictures. Two such examples are:

29. Chase used almost $15 million of investor funds to satisfy an obligation that Hollywood Pictures International owed to an unrelated third party.

30. Chase used $3.4 million of investor funds to satisfy an obligation that Production Capital LLC, whose performance Chase had personally guaranteed, owed to an unrelated third party.

31. In addition to using investor funds for unrelated business activities, Chase also used at least $8.9 million of investor funds for his personal benefit. Four such examples are:

32. Chase paid off almost $1.8 million in charges on his American Express card.

33. Chase donated more than $1.5 million to the University of Southern California.

34. Chase made cash withdrawals and wrote checks payable to himself totaling more than $1.3 million.

35. Chase used almost $1 million to purchase several Tesla automobiles.

36. Chase did not disclose these uses of funds to investors.

37. These uses of funds were not consistent with the representations Chase made to investors.

38. Knightsbridge used only about one-third of investor funds for its stated purpose of providing post-production film financing to movie companies.

39. Knightsbridge did not earn the amount necessary to pay the returns due its investors from the post-production film work it financed.

40. Consequently, Chase relied on investor principal and monies provided by other sources to pay the returns due investors and thus create the appearance that Knightsbridge was a successful and profitable enterprise.

### The Unregistered Offering

41. Knightsbridge raised at least $62 million from the sale of its securities to more than 100 investors nationwide and overseas.

42. Chase was a necessary participant in, and played a substantial role in, the offer and sale of Knightsbridge's securities.

43. Knightsbridge's offering was never registered with the Commission.

44. Neither Chase nor Knightsbridge made any effort to determine whether its investors were accredited.

### FIRST CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violation of Section 17(a)(1) and (3) of the Securities Act

45. The SEC realleges and incorporates by reference paragraphs 1 through 44 above.

46. Defendant Chase engaged in a fraudulent scheme in which he raised at least $62 million from the sale of Knightsbridge securities, by representing to Knightsbridge investors that their funds would be used to fund motion picture operations, but instead using the majority of investor funds for unrelated business activities and for his personal benefit and enjoyment.

47. By engaging in the conduct described above, Defendant Chase, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, (a) with scienter, employed devices, schemes, or artifices to defraud; and (b) with scienter or negligence, engaged in transactions, practices, or courses of

business which operated or would operate as a fraud or deceit upon the purchaser.

48. By engaging in the conduct described above, Defendant Chase violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) & 17(q)(a)(3).

## SECOND CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c)**

49. The SEC realleges and incorporates by reference paragraphs 1 through 46 above.

50. Defendant Chase engaged in a fraudulent scheme in which he raised at least $62 million from the sale of Knightsbridge securities, by representing to Knightsbridge investors that their funds would be used to fund motion picture operations, but instead using the majority of investor funds for unrelated business activities and for his personal benefit and enjoyment.

51. By engaging in the conduct described above, Defendant Chase, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

52. By engaging in the conduct described above, Defendant Chase violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & 240.10b-5(c).

## THIRD CLAIM FOR RELIEF

**Unregistered Offer and Sale of Securities**

**Violation of Sections 5(a) and 5(c) of the Securities Act**

53. The SEC realleges and incorporates by reference paragraphs 1 through 44

above.

54. Defendant Chase directly or indirectly offered and sold Knightsbridge's securities in offerings that were not registered with the SEC and that are not subject to a valid exemption to registration.

55. By engaging in the conduct described above, Defendant Chase, directly or indirectly, singly and in concert with others, made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

56. By engaging in the conduct described above, Defendant Chase violated, and unless enjoined is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendant Chase committed the alleged violations.

### II.

Issue a judgment, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendant Chase, and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5, 17(a) of the Securities Act [15 U.S.C. §§77e and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Order Defendant Chase to disgorge all funds received from his illegal conduct, together with prejudgment interest thereon.

### IV.

Order Defendant Chase to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 11, 2020

/s/ *Peter F. Del Greco*
Peter F. Del Greco
Attorney for Plaintiff
Securities and Exchange Commission